Good morning, Your Honors. My name is Daryl Patton. I represent the plaintiff and relator Diana Juan in this matter. Your Honor, I would like to provide a little bit of context first before I discuss the substantive matter about whether amendment of the operative complaint would have been futile, and then the procedural question of how we got to that point. This is kind of a unique case with respect to the other cases that involve Medicare overbilling, false certification, reverse false claims. Because the actor here is a state actor, it is the University of California, San Francisco, and its medical center, which are under prevailing case law, not subject to false claims acts. However, because of their very nature, a large portion of the revenue that is generated by these entities comes from the federal government in terms of Medicare and Medicaid reimbursements. And that's why this case is a little bit different than, for example, the Selingo case, which I hope to discuss a little bit with Your Honors. And the other cases that involve Medicare reimbursement, because we've got individuals here, individuals that we've pled, have the ability and the knowledge provided both by Ms. Juan herself in her complaints and in the prior penalties that had been paid by UCSF, that they had knowledge that their systems were inadequate to report and bill correctly. Now, this brings us to the question of what is sufficient under Selingo, the 2018 case that came down here while this matter was pending, for two types of claims. Reverse false claims, where you have notice that your institution, that you're receiving your salary from and you're responsible for the budgets, et cetera, which these individuals are, that you know that your systems have a degree that is non-de minimis of misstating and overbilling. You have knowledge of that and you don't take action, the exact action that was proposed by Ms. Juan, which is engage quality assurance process to verify that your outsourced coding is in fact actually coding correctly and that you're not submitting overbilling statements to Medicare. So that's under Reverse False Claims Act. And then you have false certification. What is required in terms of specificity under 9B, which applies to the acts that are necessary to make an allegation under the False Claims Act for a false certification? It's that you know of the facts that you have been in the past and your systems in the past do not meet that standard, that you have a non-de minimis differential between what truly occurred in terms of the coding for these medical services and what audits that Ms. Juan provided for just one department, the Department of Neurology, for just one department, that that differential exists. You have knowledge of that and you have the ability to raise your hand as the head of these departments and say, please don't certify on our behalf whoever it is within the institution that is actually signing off and doing the answer. So none of the defendants here actually signed off? I don't believe so, Your Honor. And this is because these are facts which are particularly within the defendant's knowledge. Ms. Juan doesn't know who is actually the functionary that is actually signing off on this stuff. What she does know is that there's a compliance department, that there's a head of her department, and she takes it to them and says, these are real problems. So let me ask you this. So the district court said that you just failed to satisfy Rule 9 requirements. And that's the specificity. With respect to each individual. Yes, Your Honor. And if we look at Salingo, if I could move on to that. If we look at Salingo, this is not an instance where we have a chain conspiracy where we need to say this individual submitted this document and that led to this document being, this certification being made, et cetera. This is more like the hub-and-spoke conspiracy where individuals, every single individual that is named as an individual defendant where the corporate entity cannot be sued under the False Claims Act, each one of these individuals had the knowledge, had the authority, and failed to take action. Now, we don't differentiate between them because they are the individuals that Ms. Wan complained to so she can, of her firsthand knowledge, say, yes, I put these people on notice. They had knowledge. Second, they have the ability to take action and say, wait a second, whoever's signing off on this, we can't sign off on this because Ms. Wan made a complaint and gave us a condominuous differential here that shows that we're overbuilding still. May I ask you this? Yes, Your Honor. Rule 9-6 in my mind for a long time, on the basis of the requirement of alleging who, what, where, and when, keeping those four things in mind, tell us what allegations Juan made of any who, what person, knew what, when, and did what? Yes, Your Honor. Prior to, so in the paragraphs that begin on paragraph 60 in the excerpts of record. Paragraph 60, 6-0. That's correct, Your Honor. And that's approximately excerpts 330. She's identifying when she's providing knowledge to the individuals. So this is the notice aspect. Now remember, we're talking here about false certification and reverse false claims. I don't see the name of anyone in paragraph 60. No, Your Honor. Who, what, where, when. Who, where is an allegation that some person knew that the claim was false and submitted it anyway and got payment? That's what I'd like to know. So, Your Honor, we're not making an allegation that they knew and submitted the payment. We're talking about false certifications and knowledge that claims were submitted in the past that. Who knew that the claims were false and certified them in the present falsely? Your Honor, we don't, as I indicated previously, I don't know, we don't have the knowledge of who actually did the certification. What we do have knowledge of is who Ms. Wong complained to. And that's enough, that's enough to state a ketamine, a ketamine claim against the defendant under Rule 9? No, Your Honor. It's, it's, that, that alone is not sufficient. They have to have the ability and the duty to take corrective action and then fail to do so. That is sufficient for the allegation of specificity under, under Rule 9. Your Honor, I'd like to reserve a minute and a half for rebuttal. That's fine. Thank you, Your Honor. May it please the Court. I'm here, Elizabeth Moulton, for the defendants Sam Hoggood, Stephen Hauser, and Eileen Kanaher. The group pleading problem is the reason that the District Court dismissed the complaint and did not abuse its discretion in denying leave to amend. So just to remind the Court what happened below. Ms. Wong has had multiple opportunities and has been given explicit instructions on how to adequately plead her case. After she filed her first amended complaint, the defendants moved to dismiss. The District Court held a hearing and detailed the litany of problems with her complaint. Judge Wilkin gave Ms. Wong's counsel instructions about what needed to be included in the next version. What did Ms. Wong do? She filed the second amended complaint that simply parroted the deficient allegations the District Court had already rejected, and you can see that in the red line at Excerpts 420. She added a series of copy-and-paste conclusory allegations of knowledge and a failure to act that encompassed each individual defendant, but did not allege specific facts that would make those conclusory allegations plausible. She made no real effort to overcome the problems with her complaint, and the District Court exercised its discretion to dismiss those prejudices. If we look at the group pleading problem, which was the basis for the District Court's over and over, in Corinthian, in Swobin, in Schwartz, in Desvino, that a plaintiff cannot simply lump together different defendants and allege that everyone did everything. But that's exactly what Ms. Wong did in this case. The central allegation is that these individuals knew about billing problems and did nothing to fix them. But the problem is, when you look beyond the conclusory legal statements to the specific defendant worked in a different department, each defendant had different knowledge of these issues, if any, and they could not have had the same role in the fraud. So could you take one of the defendants as an example in your red line versus? Sure. So, Chancellor Hoggad, he's- Hoggad, yes. Okay. I've got him right up. Sure. So, Chancellor Hoggad, he is alleged to have general knowledge of everything and to have knowledge and fail to act. He is not alleged to know about any specific problem in the complaint at all, and she didn't add any allegations about him in the red line, in the Second Amendment complaint. If we look at Mr. Hauser, he's the chair of the neurology department. He is only alleged to know about the FTI audit and then that he was also aware of Viacode audits. She didn't add any new allegations about him between the First Amendment complaint and the Second Amendment complaint. The last defendant is Ms. Kanaher. She works- So, let me ask you this. In new paragraph 145, it says, Defendant Hauser knowingly permitted the continued presentation or cause to be presented claims for payment from the United States government, knowingly made or cause to be made false records or statements in order to receive payment from the government, and act together to conspire with the other named defendants to have the Those are conclusory legal allegations and they're not supported by any of the specific facts listed in the complaint earlier when she details the misbilling problems. So we have to look, that's what she added, but we have to look past that to see what would actually make that legal conclusion plausible. And there's nothing in the complaint that would do that. And the same is true- That's what Judge Wilkins said, right? Yes, and I completely agree with that conclusion. And the same is true for Ms. Kanaher. In the complaint, she's actually not alleged to know about any of these specific issues other than the J-1 visas, which weren't briefed on appeal. I think it's fair to conclude that she knew about this professional versus hospital billing issue because she was included on one of the charts that Ms. Juan sent, which was in paragraph 99 of the second amendment complaint, which is around excerpts 342. So the issue there is that Ms. Juan was told about a problem, that there's this time lag between professional bills, which are doctor time, and hospital bills, which are basically bills for medical equipment. If you have a procedure that requires both doctor time and medical equipment, the idea is that you're billed for those at the same time. The problem is sometimes the bills get disconnected in the billing system because it takes the fees versus the fee for the six electrodes that they use during your medical test. So what happened is those fees get separated and there can be billing issues that require someone to go into the billing system and reconcile the fees, get everything matched up again together. So Ms. Juan becomes aware of a problem like that. She audits the scope of the problem and presents the results of her audit, which is that chart to her supervisors, and then she's given access to the billing system to fix that problem and tells her supervisors and working with compliance to fix the problem. The only plausible inference from those allegations is that Ms. Juan is fixing the problem, not that these defendants have knowledge that they're continuing to submit false claims to Medicare. She can't raise a problem, audit it, tell her boss that she's fixing it, and then later sue them for submitting a false claim. The only plausible inference is that the problem is fixed and that she's responsible for fixing it. And that's the only thing that Ms. Kanaher is alleged to have specific knowledge of in the complaint. So he stood up to, counsel stood up and argued reverse false claims? I think the theory for that is that they failed to fix problems that had occurred in the past. So they shouldn't be, they should have gone back and fixed problems that she had identified and that by failing to correct that, they had submitted a false claim. But the complaint shows that they actually did go through and fix these problems. So that claim is implausible. If there are no further questions, we ask that the district court be affirmed. Okay. Thank you. Thank you. So counsel did identify a number of the paragraphs 82 and 83 where the AVIA code had given, that and other individuals and, and not Hoggett, but Houser, the also paragraphs 100 and 101. She alerts the compliance department, I believe with lead to amend that we could allege that the compliance department is under an obligation to, to let the chancellor know that this is, this is an issue and it's going on. Now, with respect to the notion that, that they went ahead and fixed it, these are, these are submissions that the respondents submitted outside of the scope of the complaint. The court didn't give us an opportunity if it was, the court was going to convert this to a motion for summary judgment to counter those allegations, the going out and fixing it or the degree to which these, these matters had been addressed previous or subsequently. And the emails of Ms. Juan saying that I'm going to go out and the district court pretty much kept an eye on the complaint. I'm sorry, Your Honor. The district court focused on the allegations in the, in the complaints. Yeah. Yes, Your Honor. And that's pretty clear from reading the transcript of what happened. It is Your Honor. And just finally, I'd like to address the question of procedurally on, on the, the court. We filed a second amended complaint. The courts who respond to issued an order for us saying, here's these problems. I'm going to dismiss the individual defendants and that you didn't have in your previous complaint and said, this is without prejudice to you bringing a motion for leave to amend under Rule 15. Shortly thereafter, another motion to dismiss was filed. That was briefed. And while that was pending, briefed and argued, and we were waiting for the court's ruling on that, the court came back and said, no, I'm dismissing it. I'm not giving you an opportunity for leave to amend because you didn't amend. Well, it's my practice, Your Honor, to while there's a pending motion to dismiss, not to run in and file another motion for leave to amend while that motion to dismiss is still pending. And we'd submit and we ask that the court remand. Thank you. Thank you, Your Honors. The matter is submitted at this time.
judges: Paez, Bea, Jack